In re Estate of Moseley: Pfau, Admr., Appellant, *v*. Moseley, Appellee.

(No. 40031—Decided December 28, 1966.)

14

*Mr. Alfred Pfau*, for appellant.
*Mr. James H. Eastland, Jr.*, for appellee.

TAFT, C. J.  The order of the Probate Court deals only with Ohio real estate.  No one before the court is complaining because it did not also deal with personal property.  The only reference in the record to personal property is to rents received from the Ohio real estate.  Such rents, if collected after

the testator's death, would represent and be disposed of as real estate. *Barlow* v. *Winters National Bank & Trust Co., Trustee* (1945), 145 Ohio St. 270, 61 N. E. 2d 603. There is nothing in the record tending to show that such rents were not collected after the testator's death. Therefore, we are not required in the instant case to express any opinion and we express none on whether the widow's election in Ohio would have any effect whatever on personal property owned by testator at his death.

Also, there is nothing in the record to indicate that the widow has or will make any claim to anything under the testator's will. Cf. Kinney, Election in Ohio by a Surviving Spouse (1940), 34 *et seq.*; annotation, Conflict of Laws regarding election for or against will (1936), 105 A. L. R. 271, 280; Goodrich, Conflict of Laws (Scoles Ed. 1964), 338, Section 170; Reporter's note to Restatement of the Law 2d, Conflict of Laws, Tentative Draft No. 5, Section 253 (1959).

Thus, the question to be determined may be stated as follows:

Where an authenticated copy of a will executed and proved according to the laws of the state of the decedent's domicile has been admitted to record pursuant to Section 2129.05, Revised Code, and where it is not established that the widow who was domiciled in that state has claimed anything under that will or otherwise elected to take thereunder and where the testator owned real estate in Ohio at his death, does such widow have the right, with respect to that Ohio real estate, to elect not to take under the testator's will but to take under the Ohio statute of descent and distribution (Section 2105.06, Revised Code) even though no such election is permitted by the law of the state of the testator's domicile at death.[2]

For the following reasons, our conclusion is that she does. Cf. *Crabbe, Admr.,* v. *Lingo* (1946), 146 Ohio St. 489, 495, 67 N. E. 2d 1, where it was assumed that a nonresident surviving spouse could elect not to take under a will probated in another state when ancillary administration was being had but it did not appear that such election could not have been made in the state where the will had been probated.

---

[2] See footnote 1.

Appellant's argument may be summarized as follows:

1. "The right of a surviving spouse to elect" to take or elect not to take under the will of her deceased husband is "unknown to the common law."

2. The statutes of Ohio providing therefor "are in derogation of a centuries old right to receive property under a will and should, therefore, be strictly construed against" giving such surviving spouse a so-called right to elect against the will.

3. No Ohio statute expressly gives a surviving spouse the right to so elect with regard to a will admitted to probate in another state and thereafter admitted to record in Ohio.

4. Section 2107.39, Revised Code, applies only "after the probate of a will."

5. A will cannot be probated in Ohio if it has previously been admitted to probate in the state of the testator's domicile. Section 2107.11, Revised Code.

6. There is a specific provision for election in the instance of a will made in a country other than the United States and its territories and admitted to record in Ohio (Section 2129.07, Revised Code) but no comparable provision for a will made in another state and so admitted.

7. To allow election by a surviving spouse in Ohio against a will probated in another state where the testator and the surviving spouse were domiciled and where such spouse had no right to elect against the will would (a) create needless conflicts with administration of estates by the domiciliary state and (b) frustrate the intentions of those domiciled in the other state who would be familiar with its law and not with the law of Ohio.

The last argument is more than outbalanced by the desirability of having the title to Ohio real estate determined, where possible, by Ohio statutory provisions rather than by the statutes and law of another state. Such other state can have no interest in Ohio land comparable to the interest that Ohio has in that land. Those who own, acquire and dispose of Ohio land must necessarily look to the law of Ohio. For Ohio to then permit the law of another state to govern the title to Ohio land would eliminate the certainty, uniformity, predictability and convenience that there would be if it made that

title dependent only upon its own internal law. The stipulation made in the instant case is a good example of the confusion and uncertainty that would be generated. See footnote 1, *supra*, and related text.

If Ohio internal law were held not to apply, no one would seriously contend that the law of any state other than the domicile of the decedent should govern the dower interest of a surviving spouse in Ohio real estate, any interest in Ohio real estate provided by statute in lieu of the dower interest therein, or the right of such spouse to protect such interests in Ohio real estate by electing not to take under a will. However, domicile is not always readily determinable, especially now that it has become so easy for people to move from a home in one state to a home in another state and to own and maintain homes in more than one state.

To permit the law of a state other than the state where land is located to govern or be an important factor in determining the title to such land would destroy the certainty and convenience so desirable in determining the title to land.

This desire for certainty and convenience is a strong reason for construing our statutes, with respect to the so-called right of a surviving spouse to elect against a will and take her distributive share of the testator's Ohio real estate, as applying to a foreign will probated in another state and admitted to record in Ohio.

With regard to appellant's first and second arguments, we must consider the reason for what appellant refers to as the "right of a surviving spouse to elect."

This so-called right of election is directly related to the right of the surviving spouse to dower. See 9 Ohio Jurisprudence 2d 816, Conflict of Laws, Section 104 (1954).

Thus, at common law, unless the will expressed an intention that its provisions for a spouse were to be in lieu of or to bar the right to dower, such provisions were held to be given in addition to dower. *Jennings* v. *Jennings* (1871), 21 Ohio St. 56, 79; annotation, *supra* (105 A. L. R. 271), 272. In such an instance there was no need for the surviving spouse making any election to take or not to take under the will. Such surviving spouse took what was provided under the will in addi-

tion to dower. Annotation, *supra* (105 A. L. R. 271), 272. However, where there was such an expressed intention in the will, it was necessary for the surviving spouse to take against the will in order to take rights of dower instead of the provisions made in the will for such surviving spouse. In the latter instance, there was, even at common law, a right to elect against the will. *Jennings* v. *Jennings, supra* (21 Ohio St. 56), 80.

Likewise, where the common-law rule was reversed by statutes, which declared that provisions of a will for a surviving spouse should be regarded as having been made in lieu of dower unless the will provided otherwise, it was necessary for a surviving spouse to elect between provisions of the will and dower rights. *Jennings* v. *Jennings, supra* (21 Ohio St. 56), 79.

Thus, in Ohio, prior to 1932, if provision were made in the will of a testator for the surviving spouse, he or she was required to elect whether to take under that will or against that will. *Jennings* v. *Jennings, supra* (21 Ohio St. 56), 76; Kinney, Election in Ohio by a Surviving Spouse, *supra*, 9, 10. Until 1932, if such surviving spouse elected to take against the will, he or she retained dower and also received a portion of the testator's personal estate; and dower included "an estate for life in one-third of all the real property of which the deceased consort was seized as an estate of inheritance at any time during the marriage." See Section 8606, General Code, as in force prior to 1932.

This was substantially changed by Section 10502-1, General Code (now Section 2103.02 Revised Code), which became effective in 1932 and which provided in part that the dower interest of the surviving spouse should "terminate upon the death of the consort except" in certain limited instances. That statute provided further that "in lieu of such dower interest as terminates and is barred pursuant to the provisions of this section, a surviving spouse shall be entitled to the distributive share provided by" what is now Section 2105.06, Revised Code.

Thus, it is apparent that the right of a surviving spouse to elect to take against the will is provided to protect dower or what statutes give to the surviving spouse in lieu of dower.

In *Dunseth* v. *Bank of the United States* (1833), 6 Ohio 77, it is stated:

"* * * It [dower] is a claim sanctioned by long established usage, so ancient, that its origin is now lost in doubt and uncertainty. In 2 Bl. Com. Tuck. Ed. 130, it is said that dower is possibly the relic of a custom of the Danes; but, however this may be, Lord Coke informs us, it is one of the three favorites of the common law. * * *

"The statutes of the several states, in relation to dower * * * have constantly received a most liberal and beneficial construction, and have been considered as entitled to the favorable consideration of all courts of justice."

On the other hand, as stated in *Patton* v. *Patton* (1883), 39 Ohio St. 590, 597:

"While the right of testamentary disposition may be * * * instinctive, it nevertheless depends solely on municipal law, and has never been regarded as a natural or inalienable right. It has always been subject to the control of legislative power, and such power is not limited in this state by constitutional provision. * * *""

To the same effect, see *State, ex rel. Taylor, Pros. Atty.,* v. *Guilbert, Aud.* (1904), 70 Ohio St. 229, 249, 71 N. E. 636; *Kirsheman* v. *Paulin, Exr.* (1951), 155 Ohio St. 137, 140, 98 N. E. 2d 26; and *Bauman* v. *Hogue, Admr.* (1953), 160 Ohio St. 296, 300, 116 N. E. 2d 439.

Hence, there is no basis whatever for appellant's contention that the statutes of Ohio, with respect to the so-called right of a surviving spouse to elect against a will, are in derogation of any fundamental right to receive property under a will and should therefore be strictly construed against the existence of such a right to elect.

On the contrary, the history of dower and of the right to elect against a will indicates that statutes, providing for such a right of election, should be construed if possible so as to provide therefor whenever such a right of election would protect the statutory interest in Ohio real estate that has been provided in lieu of dower therein.

In our opinion, there is no merit to appellant's other arguments since the Ohio statutes can be reasonably construed as providing a nonresident surviving spouse with the right to elect not to take under a will probated in another state and admitted

to record in Ohio but instead to take the share of testator's Ohio real estate provided for such spouse by the Ohio statutes relating to dower and to descent and distribution.

So far as pertinent, Section 2107.39, Revised Code, reads:

"After the probate of a will and filing of the inventory, appraisement, and schedule of debts, the Probate Court on the motion of the executor or administrator, or on its own motion, forthwith shall issue a citation to the surviving spouse, if any be living at the time of the issuance of such citation, to elect whether to take under the will or under Section 2105.06 of the Revised Code. If such spouse elects to take under such section, such spouse shall take not to exceed one-half of the net estate and unless the will shall expressly provide that in case of such election there shall be no acceleration of remainder or other interests bequeathed or devised by the will, the balance of the net estate shall be disposed of as though such spouse had predeceased the testator. The election shall be made within one month after service of the citation to elect, or if no citation is issued such election shall be made within nine months after the appointment of the executor or administrator. On a motion filed before the expiration of such nine months and for good cause shown, the court may allow further time for the making of the election. * * *''

Section 2107.39, Revised Code, does not by its words apply only "after the probate of a will" in Ohio. The words, "In Ohio," do not appear in the statute. Furthermore, Section 2129.05, Revised Code, under which the will involved in the instant case was admitted to record, reads in part:

"Authenticated copies of wills, executed and proved according to the laws of any state or territory of the United States, relative to property in this state, may be admitted to record in the Probate Court of a county where a part of such property is situated. Such authenticated copies, so recorded, shall be as valid as wills made in this state."

This statute does not state that a will so recorded shall have more validity than a will made in this state. The words used are "as valid." See *Bailey v. Bailey* (1837), 8 Ohio 239; *Jennings v. Jennings, supra* (21 Ohio St. 56), 79. If the widow in the instant case has no right to elect to take against the will

and receive a share of the Ohio real estate, the will in the instant case can have more validity, in passing the title to Ohio real estate, than a will made in this state by a resident owner of Ohio real estate.

Section 2107.11, Revised Code, reads in part:

"A will shall be admitted to probate:

"* * *

"(B) In any county of this state where any real or personal property of such testator is located if, at the time of his death, he was not domiciled in this state, and provided that such will has not previously been admitted to probate in this state or in the state of such testator's domicile."

If we should hold, as appellant contends, that Section 2107.39, Revised Code, does not authorize the widow to make an election in the instant case, we would have an absurd result. Then, the will of a nonresident decedent, offered for probate in Ohio when not previously admitted to probate in the state of the testator's domicile, might have less effect (because of the right of the surviving spouse to elect against it) with regard to the title to the testator's Ohio real estate, than the same will would have had if it had been admitted for record under Section 2129.05, Revised Code.

Furthermore, appellant's contentions would lead to an interpretation of Section 2129.07, Revised Code, relating to a will "executed, proved, and allowed in a country other than the United States and territories thereof," that would be absurd. The only provision in that statute for the so-called right of election reads:

"* * * When such copy has been filed and recorded, and *when no ancillary administration proceedings have been had or are being had in Ohio*, Sections 2107.39 to 2107.45, inclusive, of the Revised Code, relating to election shall be the same as in the case of resident decedents, except that such election shall be made not later than six months after the record of such copy."

Would anyone seriously contend that the General Assembly intended that, merely because no ancillary administration proceedings were being had, a different result should follow with

respect to the title to Ohio real estate, than would follow if such proceedings were being had?

It is obvious that the General Assembly apparently believed that, where ancillary administration proceedings were being had, the provisions of Section 2107.39, Revised Code, would apply.

That the General Assembly intended to express such a purpose seems to follow from the provisions of Section 2129.10, Revised Code, reading:

"Except as otherwise provided by Sections 2129.01 to 2129.-30, inclusive, of the Revised Code, the procedure in ancillary administration shall be the same as in the administration of estates of resident decedents * * *."

That section indicates a legislative intention that, where an authenticated copy of a will, executed and proved according to the laws of another state, has been admitted to record in the Probate Court of a county in this state with the statutory admonition (Section 2129.05, Revised Code), that such copy "shall be as valid as" a will made in this state, the procedure specified in Section 2107.39, Revised Code, with regard to the so-called right of election for or against the will should be followed.

Prior to the enactment in 1932 of the foregoing statutory provisions now found in Section 2129.10, Revised Code, there was some question as to such procedure, i. e., the time within which or whether a nonresident surviving spouse of a nonresident testator could be required to make an election for or against the will. See *Jennings* v. *Jennings* (1871) (21 Ohio St. 56). However, the *Jennings* decision clearly recognizes the right of such a surviving spouse to take under Ohio law a dower interest in Ohio real estate against the will, even where that will had previously been probated at the domicile of the testator in another state.

In *Jennings* v. *Jennings, supra* (21 Ohio St. 56), the testator died a resident of West Virginia leaving the plaintiff as his widow and only heir at law. Under his will, which was duly probated in West Virginia, he left his widow one-half of his personalty (amounting to over $200,000) and a life estate in

one-third of his realty.   Most of his real estate was in Ohio.
The widow elected not to accept the provision made for her by
the will.

In the opinion, after finding nothing in the will which
indicated that the provision made for the widow in the will
should be regarded as having been made in lieu of dower or in
addition to dower, it is stated, at page 76:

"* * * In such a case, the doctrine of the common law is
that the provision shall be regarded as having been intended
to be given in addition to dower.   And such, it is conceded, is
the law of West Virginia, the place of the testator's domicile.
* * *.   The * * * wills' act of this state reverses this rule of
construction, at least as to domestic wills; and declares that if
any provision be made for a widow in the will of her husband,
she shall make her election, whether she will take such provi-
sion or be endowed of the lands of her husband; but that she
shall not be entitled to both, unless it plainly appears by the
will to have been the intention that she should have such provi-
sion in addition to her dower. * * *

"* * *

"* * * The Ohio statute clearly repudiates, in respect to
domestic wills, the rule of construction given by the common
law; and as to foreign wills, it declares that when duly executed
and proved according to the law of the testator's domicile,
authenticated copies of such wills and probate, when admitted
to record in this state, and duly recorded, 'shall have the *same
validity*,' [that is, the same legal force and efficacy] 'as wills
made in this state, in conformity with the laws thereof, are de-
clared to have.'   The effect of this provision * * * was merely
to place the will on the same footing as though the original pro-
bate had been made in this state; that is, to place it on the same
footing as that of a domestic will.   Now, if the foreign and the
domestic will both stand on the same footing, are both to have
the same legal force and efficacy?   They must both be subject
to the same general law of construction, unless the statute pro-
vides otherwise.   To hold otherwise, would be to give an opera-
tion and effect to the one, which is denied to the other; and to
make the construction and effect of the testator's will, in its

operation upon titles to lands in this state, depend upon the law of another sovereignty. \* \* \*

"\* \* \* a necessity for election arises from the very nature of the case. The widow cannot claim, both under the will, and adversely to it. She has a right to do *either*, but cannot do *both*. It may not be necessary, in the case of a foreign will, that she make her election within the time, or in the manner, prescribed by the statute in the case of domestic wills. Nevertheless, the will, properly construed, having created a case for election, at common law, such election must be made, whenever the protection of the rights of other interested parties make it necessary; and in such manner as will be binding upon her.

"No difficulty on that subject arises in this case, for she avers in her petition, that she has elected not to take under the will of her husband; and the defendants do not call this averment in question."

To the same effect see Kinney, Election in Ohio by a Surviving Spouse, *supra*, 20; 9 Ohio Jurisprudence 2d 814 *et seq.*, Conflict of Laws, Section 104 (1954); Restatement of the Law 2d, Conflict of Laws, Tentative Draft No. 5, Section 253.

As in the *Jennings case*, it is not necessary in the instant case to determine whether the provisions of what is now Section 2107.39, Revised Code, as to the time and manner of election of a surviving spouse, apply to a will probated at the domicile of the testator in another state and filed for record pursuant to Section 2129.05, Revised Code.

There was an election and it was made in the manner and well within the time required under any reasonable construction of Section 2107.39, Revised Code.

*Judgment affirmed.*

ZIMMERMAN, MATTHIAS, O'NEILL, HERBERT, SCHNEIDER and BROWN, JJ., concur.